UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA MATTERN, Plaintiff, | ) | |
| v. | ) | Case No. 11 C 984 |
| PANDUIT CORPORATION, Defendant. | ) | Judge John W. Darrah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Mattern filed an Amended Complaint against Panduit Corporation ("Panduit"), alleging claims for sexual harassment and retaliation under Title VII (Count I), failure to accommodate in violation of the American with Disabilities Act ("ADA") (Count II), violation of the Family Medical Leave Act ("FMLA") (Count III), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Before the Court is Panduit's Motion to Dismiss Mattern's Amended Complaint.

**BACKGROUND**

The following facts are drawn from Mattern's Amended Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Mattern's Amended Complaint contains more than 200 paragraphs; a summary of the relevant facts follows.

Mattern was hired by Panduit on January 18, 1999, as a Product Manager 2 in the Global Marketing Program. (Am. Compl. ¶ 29.) Mattern had a personal relationship

with the owners of the company, Jack and Marge Caveney, since childhood. (*Id.* ¶ 25.) Mattern dated Jack Caveney's son, Martin Caveney, prior to her employment at Panduit. (*Id.*) Mattern alleges that she remained friends with Martin after their relationship ended. (*Id.*) Martin began working at Panduit in 2008. (*Id.* ¶ 94.)

After she began working at Panduit, Mattern alleges that the Caveney family asked her to visit Martin, who was at a medical facility in Topeka, Kansas. (*Id.* ¶ 32.) Mattern made these trips "on [Panduit] company time and expense." (*Id.* ¶ 25.) Martin was later moved back to Illinois, and Mattern visited Martin upon his return. (*Id.* ¶ 36.)

Subsequently, Mattern could no longer visit Martin due to the onset of her own serious health issues. (*Id.* ¶ 38.) After her health issues became an obstacle to spending time with Martin, Mattern alleges that "it became apparent that the Caveney family expected [her] to take care of Martin in every respect, including sexually, as a condition of employment." (*Id.* ¶ 39.)

In June 2006, Mattern traveled to the Mayo Clinic in Rochester, Minnesota, for evaluation and testing. (*Id.* ¶ 42.) On June 26, 2006, during her visit to the Mayo Clinic, Mattern was unexpectedly approached by Joe Rocci, a Panduit employee and the son-in-law of Jack Caveney. (*Id.* ¶ 44.) Mattern accepted Rocci's invitation to dinner that evening. (*Id.* ¶ 45.) At dinner, Rocci asked Mattern when she planned on moving in with Martin and suggested she do so after her children went to college. (*Id.* ¶¶ 47-48.) Mattern alleges that Rocci also added that Mattern could have sexual relations with Martin in spite of her medical problems. (*Id.* ¶ 55.) Mattern told Rocci that her

relationship with Martin was platonic in nature and that she has no plans to live with Martin. (*Id.* ¶¶ 49, 56.)

After returning to work, Mattern reported Rocci's comments to her supervisor, Robert Levin. (*Id.* ¶ 58.) Levin, who planned to retire, restructured the department and Mattern began reporting to Shoaib Zaman, who reported to Levin. (*Id.* ¶ 59.) After Levin retired, Zaman began to report to Kathy Wishnew. (*Id.* ¶ 63.)

Mattern alleges that after Levin's retirement and her "refusal to submit to the *quid pro quo* arrangement," she was the victim of numerous acts of harassment. Mattern alleges that Wishnew pressured Zaman to give Mattern "false write-ups and fallacious poor reviews." (*Id.* ¶¶ 65, 69.) Mattern complained of this harassment to Panduit's Human Resources Department, but her requests for a transfer to another division were denied. (*Id.* ¶¶ 66-67.) Mattern also complained to Jack Caveney, but he also denied her request for a transfer. (*Id.* ¶ 68.)

After being laid off in December 2008, Zaman admitted to Mattern that Wishnew had tampered with Mattern's employee reviews and that Wishnew intended to terminate Mattern's employment by "managing" her employee reviews. (*Id.* ¶ 72.) After receiving this information, Mattern complained to the president of the company, Tom Donovan, but alleges that he failed to take any action. (*Id.* ¶¶ 73-76.)

On January 16, 2009, Mattern took medical leave pursuant to the FMLA for deep vein thrombosis, multiple pulmonary emboli, and immune dysfunction. (*Id.* ¶ 79.) Panduit had a contract with Metlife to review medical records and approve requests for medical leave beyond two days. (*Id.* ¶ 81.) But the Human Resources Department

demanded that Mattern call every other day and advise them as to when she planned to return to work. (*Id.*) Mattern was told her employment would be terminated if she did not comply. (*Id.* ¶ 84.)

While Mattern was on her FMLA leave, Panduit sent the Naperville police to Mattern's residence and accused her of sending harassing letters to Wishnew at her home, office, and church. (*Id.* ¶ 87.) The police completed their investigation, and no charges were filed. (*Id.* ¶ 90.)

Also at this time, Mattern received phone messages from Martin, pressuring her to attend Caveney family functions with him. (*Id.* ¶ 92.) In June 2009, Martin mailed a letter to Mattern's home, apologizing for his voice messages. (*Id.* ¶ 99.) Had Mattern responded to Martin's letter, her employment would not have been terminated. (*Id.* ¶ 100.)

On July 16, 2009, Mattern called Julie Baker, a Human Resources representative, to confirm that the Human Resources Department had received her "return-to-work" letter from her physician. (*Id.* ¶ 102.) Baker asked Mattern why she was not taking long-term disability leave. (*Id.* ¶ 103.) Later, Baker sent Mattern a termination memorandum by e-mail, which cited Mattern's false performance reviews, the letters Mattern allegedly sent to Wishnew, and Mattern's FMLA leave, among other things, as the reason for her termination. (*Id.* ¶¶ 81, 110-141.)

Mattern filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII, the ADA, and the ADEA.

(*Id.* ¶ 2.) The EEOC issued Mattern a "right-to-sue" notice and she filed her complaint on February 11, 2011, within 90 days. (*Id.* ¶¶ 4-5.)

**LEGAL STANDARD**

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (*Twombly*). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

## ANALYSIS

*Timeliness of EEOC Charge*

Panduit argues that Mattern's EEOC Charge was not timely filed. In Illinois, a plaintiff may bring a Title VII, ADA, or ADEA claim in federal court only if the plaintiff files an EEOC charge within 300 days of the conduct underlying the claim. *See Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004); *see also* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117; 29 U.S.C. § 626(d)(2). This timing requirement is not jurisdictional, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Panduit's argument that Mattern failed to timely file her EEOC Charge asserts a statute of limitations affirmative defense that generally is not susceptible to disposition on a Rule 12(b)(6) motion to dismiss. *See Salas v. Wisconsin Dept. of Corr.*, 493 F.3d 913 (7th Cir. 2007); *cf. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) ("While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."). It is axiomatic that "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

Panduit concedes as much and requests that the Court reserve consideration of the statute of limitations in a subsequent motion for summary judgment. (Reply at 2.)

Furthermore, although the parties have attached several documents to their briefs, the Court declines to exercise its discretion to convert Panduit's Motion to Dismiss to a motion for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (holding that district court has discretion when deciding whether to convert a defendant's motion to dismiss to a motion for summary judgment).

At this motion-to-dismiss stage, Mattern's claims may be dismissed only if it is clear from the face of the complaint that she has not satisfied the preconditions of her claims. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Mattern has not pled facts that bar her from seeking relief. (Am. Compl. ¶ 3.) Because Panduit's argument is more appropriately decided on a motion for summary judgment, Panduit's Motion to Dismiss Counts I, II, and IV on the basis of timeliness is denied.

*Scope of EEOC Charge*

Panduit argues that Mattern's Amended Complaint contains claims that were not identified in her EEOC Charge. (Mot. at 8.) In its reply, Panduit withdraws its argument by asking the Court to reserve consideration of this issue until a motion for summary judgment. (Reply at 2.) Even so, Panduit's skeletal argument fails to identify which allegations are purportedly outside the scope of Mattern's EEOC Charge. *See Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009) (noting that underdeveloped arguments are considered waived). Panduit's Motion to Dismiss Counts I, II, and IV on the basis that Mattern's allegations are outside the scope of her EEOC Charge is denied.

*Title VII Claim (Count I)*

Next Panduit argues that Mattern has failed to state a plausible Title VII claim. In light of Mattern's "kitchen sink" Amended Complaint, it is difficult to determine, with the requisite specificity, the nature and scope of Mattern's claims. *See, e.g., Suburban Buick, Inc. v. Gargo*, No. 08 C 370, 2009 WL 1543709, at *5 (N.D. Ill. May 29, 2009) ("The complaint exhibits a kitchen-sink style of pleading, which has resulted in a very confusing, imprecise, and muddied set of allegations and counts against defendants."). Mattern appears to allege claims for sexual harassment in the form of a hostile-work-environment and *quid pro quo* harassment. Before considering whether Mattern's allegations are sufficient to state a claim, it is necessary to identify which elements of law Mattern must plead. Panduit's Motion is silent in this respect.

To state a hostile-work-environment claim, Mattern must allege: 1) she experienced unwelcome sexual advances, requests for sexual acts, or experienced any other verbal or sexual conduct; (2) the sexual conduct was so severe or pervasive to establish a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. *Quantock v. Shared Mktg. Serv., Inc.*, 312 F.3d 899, 903 (7th Cir. 2002).

Panduit asserts that Mattern cannot adequately plead that she was subject to harassment. Instead, Panduit argues, Mattern's allegations stem from a life-long personal relationship with Martin Caveney, rather than her gender. Mattern counters that she has adequately pled harassment based on her allegations that Rocci commented that Mattern could have sexual relations with Martin despite her health issues. (Resp. at 10.)

Panduit relies on *Galloway v. General Motor Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996), *overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (*Galloway*), to support its argument that a failed romantic relationship cannot form the basis of a harassment claim. In *Galloway*, a male employee (Bullock) and a female employee (Galloway) had a romantic relationship for two years. *Id.* at 1665. After the relationship failed and until Galloway quit her employment, Bullock repeatedly called Galloway a "sick bitch"[1]; and on one occasion, he made an obscene gesture at Galloway. *Id.* In holding that this conduct did not rise to the level of harassment, the Seventh Circuit held:

> The repetition of the term together with the other verbal conduct that is alleged reflected and exacerbated a personal animosity arising out of the failed relationship rather than anything to do with a belief by Bullock, of which there is no evidence, that women do not belong in the work force or are not entitled to equal treatment with male employees. In these circumstances no inference could be drawn by a reasonable trier of fact that Bullock's behavior, undignified and unfriendly as it was, created a working environment in which Galloway could rationally consider herself at a disadvantage in relation to her male coworkers by virtue of being a woman. The case was therefore properly dismissed.

*Id.* at 1168.

Mattern quotes extensively from *Walko v. Academy of Business & Career Development*, 493 F. Supp. 2d 1042, 1048 (N.D. Ill. 2006) (*Walko*), which astutely notes that "*Galloway* does not stand for the proposition *as a matter of law* that an employee cannot recover on a sexual harassment claim merely because she had in the past entered

[1] "The 'sick' apparently a reference to the fact that in 1986 and again in 1987, Galloway was hospitalized for a psychiatric disorder." *Galloway*, 78 F.3d at 1165.

into a consensual relationship with the harasser" – or in this case, her harasser's son in-law. *Id.* (emphasis in original).

But *Galloway* also "acknowledges that the prior relationship between the harasser and the victim is a factor to consider in analyzing whether the discrimination was based on *sex.*" *Id.* (emphasis added). Although *Galloway* was decided in the context of summary judgment, its guiding principle – that Title VII prohibits harassment to the extent it occurs because of an employee's *gender* – is relevant when considering a motion to dismiss. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination* . . . because of sex.").

Mattern contends that Panduit ignores the "detailed pleadings in which a Panduit employee and son-in-law of the owner, Jack E. Caveney, makes a "sex for work offer." (Resp. at 10.) But Mattern's characterization of her Amended Complaint is overstated. Indeed, Mattern cites to paragraphs of her Amended Complaint that simply do not lend themselves to such an interpretation. (*See* Am. Compl. ¶¶ 25, 42-56.) In relevant part, Mattern alleges only that "Rocci again suggested that Plaintiff move in with Martin, and added, she could have sex with Martin despite his medical problems." (*Id.* ¶ 55.) Viewing Mattern's actual allegations in the light most favorable to her, Mattern has not pled that the alleged harassment by Rocci was motivated by her *gender* rather than by a personal relationship or dispute. Namely, Mattern has not pled allegations that could plausibly support that her "work environment was hostile because it is 'sexist rather than sexual.'" *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (quoting

*Boumehdi v. Plastag Holdings, Inc.*, 489 F.3d 781, 788 (7th Cir. 2007). Accordingly, Panduit's Motion to Dismiss Mattern's hostile-work-environment claim is granted without prejudice to file an amended complaint.

Panduit also challenges Mattern's *quid pro quo* harassment claim, arguing that Rocci's alleged comments did not expressly or implicitly condition a term of employment on submission to a sexual demand. Even if Mattern's allegation regarding Rocci's comments is liberally construed, Mattern's claim fails because she has not pled that Rocci was a supervisor or decision-maker that could influence Mattern's employment. *See, e.g., Lutes v. Loni Corp., Inc.*, No. 10 C 57, 2010 WL 1963170, at *2-3 (S.D. Ill. May 17, 2010) ("Indeed, the *quid* in the claim's name represents the power or leverage that an employer and/or supervisor holds over his subordinates, which usually does not exist between mere coworkers.").

*Quid pro quo* sexual harassment under Title VII typically involves harassment occurring when "a *supervisor* conditions tangible job consequence on employee's submission to sexual demands or advances." *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir. 1997) (emphasis added). In *Bryson v. Chicago State University*, 96 F.3d 912, 915-916 (7th Cir. 1996), the Seventh Circuit referred to a five-part test, in which a plaintiff must show: "(1) that she or he is a member of a protected group, (2) the sexual advances were unwelcome, (3) the harassment was sexually motivated, (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment, and (5) *respondeat superior* has been established." The fourth element asks

"what tangible aspect of employment was affected," and the fifth element "recognizes that there is a need to link the employer to the actions of the harasser." *Id.*

In her Amended Complaint, Mattern fails to allege that Rocci had the power to make the alleged harassment a term or condition of her employment. Accordingly, Panduit's Motion to Dismiss Mattern's *quid pro quo* harassment claim is granted without prejudice to file an amended complaint.

Panduit next challenges Mattern's claim for retaliation under Title VII, arguing that the claim fails because Mattern did not engage in "protected activity." In order to establish a Title VII retaliation claim, a plaintiff must demonstrate that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *See Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005).[2]

Mattern alleges that Panduit terminated her employment in retaliation for her complaining to her supervisor and the Human Resources Department about Rocci's comments and Wishnew's interference with her performance reviews. Suffering the same deficiency as her sexual harassment claims, Mattern has not alleged that she engaged in *protected* activity. Namely, Mattern has failed to allege that when she complained about the alleged harassment by Rocci and/or Wishnew, she complained that the harassment was based on her sex. *See Tomanovich v. City of Indianapolis*, 457 F.3d

[2] Under the indirect method, the first two elements remain the same, but instead of alleging a direct causal link, the plaintiff must state that she was performing her job satisfactorily and that she was treated less favorably than a similarly situated employee who did not complain of discrimination. *See Rogers v. City of Chicago*, 320 F.3d 748, 754-55 (7th Cir. 2003). Since Mattern does not point to comparable employees, she proceeds under the direct method.

656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). Nor can such an inference be drawn from her Amended Complaint. Therefore, Panduit's Motion to Dismiss Mattern's retaliation claim is granted without prejudice to file an amended complaint.

*ADA (Count II)*

Mattern brings a "failure to accommodate" claim pursuant to the ADA. The ADA prohibits certain employers from discriminating against a qualified individual with a disability because of his or her disability. 42 U.S.C. § 12112(a). To state a claim for ADA discrimination, the plaintiff must allege the following: (1) a disability under the ADA; (2) he or she is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he or she suffered from an adverse employment action because of the disability or failed to make a reasonable accommodation. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001).

Mattern fails to state a claim because she does not sufficiently allege that she has a disability. Mattern alleges that "Plaintiff is disabled in that she suffers from the following serious medical conditions" but fails to list any medical conditions. (Am. Compl. ¶ 163.) Apart from bare allegations that she "requested reasonable accommodations for her disability" and Panduit "refused to . . . accommodate Plaintiff's disability" (*see id.* ¶¶ 169-70), Mattern fails to allege what accommodations Panduit failed to provide.

In response, Mattern argues that she "need not describe in factual detail of the accommodation requested and refused." (Resp. at 14.) To the contrary, Mattern's factual allegations must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mattern has failed to meet that requirement here. Accordingly, Panduit's Motion to Dismiss Mattern's ADA claim (Count II) is granted without prejudice to file an amended complaint.

*FMLA Claim (Count III)*

Mattern alleges that Panduit interfered with her rights under the FMLA and that the termination of her employment was in retaliation for her taking FMLA leave. Although Mattern describes Count III as "FMLA Violations, interference and denial of rights," her allegations indicate that she also brings an FMLA retaliation claim. Panduit argues that Mattern fails to state a plausible interference claim under the FMLA.

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of a right under the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1). To state a claim for FMLA interference, the plaintiff must allege the following: (1) the employee was eligible for FMLA protection; (2) the employer was covered by the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee provided sufficient notice of his intent to take FMLA leave; and (5) the employer denied the employee FMLA benefits to which he or she was entitled. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011).

Mattern has not adequately pled the fifth element as her Amended Complaint contains no allegations that she was *denied* FMLA benefits at any time during her employment.

Mattern has however sufficiently stated a claim for retaliation under the FMLA. The FMLA prohibits employers from discharging or otherwise discriminating against any individual for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(a)(2). To state a claim for FMLA retaliation, the plaintiff must allege the following: (1) he or she engaged in a statutorily protected activity; (2) he or she suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011). Mattern has alleged she took FMLA leave (Am. Compl. ¶ 187), her employment was terminated (*id.* ¶ 181), and that she was terminated because she took FMLA leave (*id.* ¶ 108.) Accordingly, Panduit's Motion to Dismiss as to Count III is denied to the extent Mattern alleges an FMLA retaliation claim.

*ADEA Claim (Count IV)*

Mattern brings a claim for age discrimination pursuant to the ADEA and has withdrawn her claim for age harassment. (Resp. at 12.) The ADEA prohibits an employer from discriminating against an individual because of such individual's age or against an employee for opposing any practice made unlawful by the ADEA. 29 U.S.C. § 623(a), (d). Mattern alleges no facts, not even her age, to plausibly demonstrate that the ADEA applies or that Panduit discriminated against Mattern because

of her age. Accordingly, Panduit's Motion to Dismiss Count IV is granted without prejudice to file an amended complaint.

## CONCLUSION

For the reasons set forth above, Panduit's Motion to Dismiss is granted as to Counts I, II, and IV without prejudice to file an amended complaint and denied as to Count III to the extent Mattern alleges an FMLA retaliation claim. Provided further that Mattern may file an amended complaint containing a **short and plain statement of the claims**, if she can do so consistent with Federal Rule of Civil Procedure 11, within 45 days of the date of this Memorandum Opinion and Order.

Date: 10-11-11

JOHN W. DARRAH
United States District Court Judge